IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBEREN IAPPINI, and<br>LILLY IAPPINI<br>individually and on behalf of<br>others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SILVERLEAF RESORTS, INC.<br><br>Defendant. | Exhibit A<br><br>Cause No: 4:15-CV-00695-RWS<br><br>JURY TRIAL DEMANDED |

## PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

COME NOW, Plaintiffs, Robert Iappini and Lilly Iappini ("Individual Plaintiffs" or "Plaintiffs" or the "Iappinis"), individually and on behalf of others similarly situated (collectively the "Class Plaintiffs"), by and through counsel, brings this Class Action Complaint against the Defendant, Silverleaf Resorts, Inc. ("Defendant" or "Silverleaf"), and complains and alleges upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by Plaintiffs' attorneys.

## NATURE OF THE ACTION

1. Any and all acts of Defendant include those of Defendant's employees, representatives, officers, managers, and agents acting on behalf of Defendant.

2. Definitions:

a. For the purposes of this action, "accommodations" is defined as "any apartment, condominium or cooperative unit, cabin, lodge, hotel or motel room, or any other private or commercial structure which is situated on real property and designed for

1

occupancy by one or more individuals, which is made available to the purchasers of a time-share plan." RSMo. § 407.600(1).

      b.      For the purposes of this action, "enrolled" is defined as "paid membership in an exchange program or membership in an exchange program evidenced by written acceptance or confirmation of membership." RSMo.§ 407.600(2).

      c.      For the purposes of this action, "exchange company" is defined as "the person operating an exchange program. RSMo. § 407.600(3).

      d.      For the purposes of this action, "exchange program" is defined as "any opportunity or procedure for the assignment or exchange of time-share periods among purchasers in the same or other time-share plans." RSMo. § 407.600(4).

      e.      For the purposes of this action, "facilities" is defined as "any structure, service, improvement, campground, recreational vehicle park or real property, improved or unimproved, which is made available to the purchasers of a time-share plan." RSMo.§ 407.600(5).

      f.      For the purposes of this action, "person" is defined as "any natural person or his legal representative, partnership, domestic or foreign corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestuique trust thereof." RSMo. § 407.600(6).

      g.      For the purposes of this action, "promotion" is defined as "any advertisement, whether by mail, radio, television, or personal sales, in which a time-share property is offered for sale by use of a sweepstakes." RSMo. § 407.600(7).

  h. For the purposes of this action, "sweepstakes" is defined as "a method of promoting the same of time-share plans which involves the offering, giving, or awarding of prizes which have odds associated with the actual delivery of the prize or gift." RSMo. § 407.600(8).

  i. For the purposes of this action, a "Time-share period" is defined as "all periods of time when a purchaser of a time-share plan is entitled to the possession and use of the accommodations or facilities, or both, of a time-share plan regardless of whether such periods are designated as one or more specific days, weeks or months." RSMo. § 407.600(9).

  j. For the purposes of this action, a "Time-share development" is defined as "a single specific parcel of real property from which only time-share plans are offered for sale or sold." RSMo.§ 407.600(10).

  k. For the purposes of this action, a "Time-share plan" is defined as "any arrangement, plan, scheme or similar device, other than an exchange program, whether by membership, agreement, tenancy in common, sale, lease, deed, rental agreement, license, right-to-use agreement or any other means, whereby a purchaser, in exchange for a consideration, receives one or more time-share periods, or any type of interval or joint ownership in, or a right-to-use, any accommodation or facility for a period of time which is less than a full continuous and uninterrupted year during any given year, and which extends for a period of more than three years, as to each individual time-share development subject to the purchase."RSMo.§ 407.600(11).

  l. For the purposes of this action, a "Time-share unit" is defined as "an accommodation or facility of a time-share plan which is divided into time-share periods,

3

or is otherwise subject to interval or joint ownership or use by the purchaser of the time-share plans." RSMo.§ 407.600(12).

m.      For the purposes of this action, "Time-share" is used interchangeably with the term "Vacation Ownership Interest" ("VOI"), includes, encompasses, but is not limited to, the definition of "Time-share unit" as articulated in RSMo. § 407.600(12).

3.      Plaintiffs bring this action individually and as class representatives to recover damages for violations of the Missouri Merchandising Practices Act ("MMPA"), RSMo. § 407.010 *et seq.*, and for Contract Rescission, for economic relief against Defendant, which, through the act, use or employment by Defendant of deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of VOI's to Plaintiffs, including but not limited to time-share periods, time-share units, time-share developments, and/or time-share plans located in the State of Missouri.

## THE PARTIES

4.      Robert Iappini and Lilly Iappini, at all relevant times herein, are residents of Houston, Texas, who purchased at least one VOI from Defendant, the VOI being located in the State of Missouri.

5.      Defendant at all relevant times herein, is a Texas corporation, engaged in the business of selling VOI's to consumers and registered as a foreign business in the State of Missouri.

## JURISDICTION AND VENUE

6.      This Court has personal jurisdiction over Defendant pursuant to RSMo. § 506.500, in that Defendant transacts business within the State of Missouri, owns property

4

within the State of Missouri and has sufficient minimum contacts with the State of Missouri.

7. Venue is proper pursuant to RSMo. § 508.010 because Defendant is a corporation whose registered agent CT Corporation System, 120 South Central Avenue, St. Louis, Missouri 63105 is located in St. Louis County, Missouri.

8. The amount in controversy in this lawsuit exceeds $25,000.00.

9. Plaintiffs demand a jury trial regarding on all issues raised herein.

## FACTUAL ALLEGATIONS

10. Plaintiffs re-allege and incorporate all of the above stated paragraphs as if fully stated herein.

11. Plaintiffs were solicited in various fashions, including but not limited to, via unsolicited U.S. Mail, phone call, referrals, and sweepstakes, to attend a presentation by Defendant regarding prospective rental and/or sale of VOI's owned and operated by Defendant, in exchange for various prizes.

12. The invitations were advertised as a 90-minute presentation by Defendant to show products, in this case VOI's, which Defendant had to offer.

13. Plaintiffs were induced by this solicitation and representation to attend said presentations.

14. Upon arrival, theses meetings stretched up to an unconscionable eight hours of high-pressure sales tactics to purchase a VOI.

15. At all times during the sales presentation, Defendant's employees sales associates, managers and agents watched over Plaintiffs' and made it difficult for Plaintiff's to leave the presentation.

16. During the sales presentation, Defendant pitched Plaintiffs' with as many as five different prices for the sale of a VOI. Each time Plaintiffs' declined, Defendant made another offer that was dramatically lower in price than the previous offer.

17. The difference between the initial price and the eventual sales price was consistently up to 50%.

18. Upon information and belief, such a precipitous drop in sales price shows that the initial offer was disingenuous, not an accurate reflection of the fair market value, and not made in good faith.

19. The Defendant's sales representatives constantly went back and forth between prospective buyers and the Time-share managers to broker different and cheaper deals.

20. During the presentation, Defendant stated that this offer was time sensitive, only good for that day, and that a decision had to be made immediately.

21. Defendant showed Plaintiffs' up-to-date, remodeled, and state-of-the-art VOI's during the presentation, and represented that, if Plaintiffs purchased a VOI, Plaintiffs would enjoy the same or similar accommodations. Specifically, Plaintiff's either went on tours to see VOI's owned by Defendant, or were shown pictures and brochures of VOI's owned by Defendant.

22. Plaintiffs tried to leave throughout this presentation, but every time they did try, additional sales associates and/or managers were brought in to bombard Plaintiffs with new and additional offers.

23. When Plaintiffs tried to leave after 90 minutes, Defendant told Plaintiffs that if they did leave, then they would not receive their prize.

6

24. At the conclusion of these presentations and after hours of coercive and deceptive sales tactics, Plaintiffs purchased a VOI located in Missouri.

25. Pursuant to the purchase contract, the Iappini's had six days from the date of purchase to cancel the contract.

26. The purchase contract for the VOI does not contain the statutorily required language as articulated in RSMo. § 407.642, specifically, but not limited to:

    a. The address of Defendant's registered agent in the State of Missouri;

    b. Bold font stating "NOTICE OF RIGHT TO CANCELLATION" with a separate cancellation notice document that can be filled out by the consumer.

27. Three days after the contract was signed, the Iappini's called Silverleaf in an attempt to cancel the contract, but were unable to reach anybody, so they left a voicemail. They repeatedly called and left multiple voicemails.

28. The Iappini's eventually received a return phone call from Silverleaf, stating that they had not called within three days and that it was too late to cancel.

## CLASS ALLEGATIONS

29. This action is brought and may be properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23, and Missouri Supreme Court Rule of Civil Procedure 52.08, on behalf of a Class defined as:

> All consumers who: (1) purchased a Time-share unit, also referred to as a Vacation Ownership Interest ("VOI") from Defendant since

7

January 1, 2010, onward; (2) with said VOI being located in the State of Missouri; (3) who attempted to cancel their VOI purchase within six days of the initial purchase; and (4) but were unable to cancel their VOI purchase because Silverleaf clogged their statutory and contractual right to cancel.

30. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff. Also excluded is any individual whose initial VOI purchase from Silverleaf was before January 1, 2010.

31. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

32. The members of the Class are so numerous that joinder of the Class members would be impracticable. Class members, upon information and belief, number in excess of forty. The precise number of Class members and their addresses are presently unknown to Plaintiff, but may be ascertained through further investigation.

33. Common questions of law and/or fact exist as to all Class members, including, but not limited to:

a. Whether Silverleaf systematically violated RSMo. § 407.642 by failing to provide two easily detachable copies of a notice of cancellation with each contract for purchase of a VOI; and

b. Whether Silverleaf systematically clogged Plaintiffs' statutory and contractual right to rescind the purchase contract for a VOI in Missouri.

34. Silverleaf engaged in a common course and in a pattern and practice of conduct giving rise to the legal rights sought to be enforced by Plaintiffs', on behalf of themselves and the Class members. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

35. Separate actions by class members would create a risk of inconsistent results or, as a practical matter, would impair the interests of other absent members of the Class.

36. The Iappinis' claims are typical of the claims of the other Class members because, among other things, all Class members were comparably injured through Defendant's uniform misconduct described above.  Further, there are no defenses available to Defendant that is unique to Plaintiffs.

37. The Iappinis individually are adequate representatives because they will fairly represent the interests of the Class.  Plaintiff has retained counsel with experience in prosecuting consumer protection causes of action.  Plaintiffs and counsel are committed to prosecuting this action vigorously on behalf of the Class they represent, and have the resources to do so.  Neither Plaintiffs nor counsel have any interest adverse or antagonistic to those of the Class.

38. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this action.  Individualized litigation creates a potential for inconsistent and/or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents

far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS

## COUNT I – VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT, RSMo. § 407.010 *et seq.*, ("MMPA")

39. Plaintiffs re-allege and incorporate all of the above paragraphs as if fully stated herein.

40. The Circuit Court has jurisdiction of this action pursuant to Chapter 407 of the Revised Statutes of Missouri, and specifically under §407.025.1, which allows an individual to seek damages, attorney fees and punitive damages for violations of §407.020.

41. Section 407.020 provides, in pertinent part:  The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…is declared to be an unlawful practice.

   a. Section 407.025.1 provides in pertinent part:

   "Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020 may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper."

10

42. Section 407.010(4) defines "merchandise" as any objects, wares, goods, commodities, intangibles, <u>real estate</u> or services.  <u>This definition of merchandise includes the VOI's purchased by Plaintiffs from Defendant</u>.

43. Pursuant to authority granted in §407.145, the Attorney General has promulgated rules explaining and defining terms utilized in §407.020 of the Merchandising Practices Act.  Said rules are contained in the Missouri Code of State Regulations (hereinafter "CSR").  The rules relevant to the Merchandising Practices Act allegations herein include, but are not limited to, the provisions of the CSR, which are as follows:

> 15 CSR 60-8.010 provides the following definitions:
>
> (1) (B) Consumer shall include any person (as defined in section 407.010.5.,RSMo) who purchases, may purchase or is solicited for purchase of merchandise.
>
> (E) Good faith shall mean honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.
> 15 CSR 60-8.020 provides that:

An unfair practice is any practice which-

> (A) Either-
>  1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trace Commission, or its interpretive decisions; or
>  2. Is unethical, oppressive or unscrupulous; and
>
> (B) Presents a risk of, or causes, substantial injury to consumers.

> 151 CSR 60-8.040 provides that:
>
> (1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to violate the duty of good faith in solicitation, negotiation and performance, or in any manner fail to act in good faith.

> 15 CSR 60-8.090 provides that:

11

>
> (1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to engage in any method, use or practice which-
> (A) Violates state or federal law intended to protect the public; and
> (B) Presents a risk of, or causes substantial injury to consumers.

15 CSR 60-9.010 provides that:

> (1) (C) Material fact is any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the person knows would be likely to induce a particular consumer to manifest his/her assent, or which would be likely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial matter.

15 CSR 60-9.020 provides that:

> (1) Deception is any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression.
> (2) Reliance, actual deception, knowledge of deception, intent to mislead or deceive, or any other culpable, mental state such as recklessness or negligence, are not elements of deception as used in section 407.020.1.,RSMo….Deception may occur in securing the first contact with a consumer and is not cured even though the true facts or nature of the advertisement of offer for sale are subsequently disclosed.

15 CSR 60-9.070 provides that:

> (1) A misrepresentation is an assertion that is not in accord with the facts.
> (2) Reliance, knowledge that the assertion is false or misleading, intent to defraud, intent that the consumer rely upon the assertion, or any other culpable [capable in origin] mental state such a recklessness or negligence, are not elements of misrepresentation as used in section 407.020.1.

15 CSR 60-9.080 provides that:

> (1) It is a misrepresentation for any person in connection with the advertisement or sale of merchandise to make an untrue statement of material fact.

15 CSR 60-9.090 provides that:

> (1) It is a misrepresentation for any person in connection with the advertisement or sale of merchandise to omit to sate a material fact

      necessary in order to make statements made, in light of the circumstances under which they are made, not misleading.

15 CSR 60-9.110 provides that:

    (1)    Concealment of a material fact is any method, act, use or practice which operates to hide or keep material facts from consumers.

    (2)    Suppression of a material fact is any method, act, use of practice which is likely to curtail or reduce the ability of consumers to take notice of material facts which are stated.

    (3)    Omission of a material fact is any failure by a person to disclose material facts know to him/her, or upon reasonable inquiry would be known to him/her.

    (4)    Reliance and intent that others rely upon such concealment, suppression or omission are not elements of concealment, suppression or omission as used in section 407.020.1.

44. Defendant used deception, fraud, false pretense, false promise, misrepresentation or unfair practice, or concealed, suppressed, or omitted a material fact in connection with the sale of the VOI's, in a pattern and practice, by engaging in the conduct as already described and outlined in paragraphs 20 through 72 of this Complaint.

45. Real estate is specifically included within the definition of "merchandise" covered by Section 407.010 (2000).

46. The above-stated actions constitute acts and practices leading to misrepresentations, concealments, false promises, fraud, omissions, deceptions and unfair practices of and concerning material facts in violation of Section 407.020 R.S.Mo. (2000).

47. Section 407.025.1 R.S.Mo. (2000) give Plaintiffs the right to recover actual damages, punitive damages, and reasonable attorney's fee and costs.

48. As a result of Defendant's conduct, Plaintiffs have suffered actual damages in the amount of money already paid towards the VOI's, financing and origination costs, additional costs and fees associated with the VOI's, and attorneys' fees,

all of which they would not have incurred but for Silverleaf's conduct in clogging Plaintiffs' statutory and contractual right to rescind the contract(s).

49. Defendant's actions were done in a pattern and practice, willful, wanton and malicious and outrageous because of evil motive or a reckless indifference to the rights of others and such conduct entitles Plaintiffs to recover punitive damages in an amount that is fair and reasonable.

WHEREFORE, Plaintiffs respectfully request that this Court award Plaintiffs actual damages, reasonably attorneys fees, and punitive damages in an amount that is fair and reasonable, court costs, and such other and further relief this Court deems just and proper.

## COUNT II – CONTRACT RESCISSION

50. Plaintiffs re-allege and incorporate the all of the above-stated paragraphs as if fully stated herein.

51. As a result of the above-mentioned conduct and false representations Defendant made to Plaintiffs, Plaintiffs are entitled to rescind the contract(s) for the VOI purchases with Defendant.

52. In order for Plaintiffs to be restored to the position Plaintiffs were in prior to the purchasing of the Timeshare with Defendant, Plaintiffs are entitled to a refund of the purchase price of the Timeshare contract with Defendant.

WHEREFORE, Plaintiffs pray this Court enter a judgment in Plaintiffs favor and against Defendant for an order rescinding the Timeshare contracts, a release of Plaintiffs herein, for damages that are fair and reasonable, and for such other and further relief this Court deems just and proper.

Respectfully submitted,

**KAYIRA LAW, LLC**

By:  /s/Eric F. Kayira.
    Eric Kayira, #50672MO
    Irene Costas, #60825MO
    200 S. Hanley Rd., Ste 208
    Clayton, MO 63105
    Phone:  314-899-9378
    Fax:  314-899-9382
    eric.kayira@kayiralaw.com
    irene.costas@kayiralaw.com

    ***Attorneys for Plaintiff***

**CERTIFICATE OF SERVICE**

      I certify that on June 26, 2015, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Charles W. Hatfield, Esq.
230 W. McCarty St.
Jefferson City, MO 65101

John W. Moticka, Esq.
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105

Andrew P. Speicer, Esq.
Timothy A. Daniels, Esq.
3400 Bank of America Plaza
901 Main Street
Dallas, TX 75202

*Attorneys for Defendant*                    */s/ Eric F. Kayira*_____